IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF
PENNSYLVANIA

| | |
|---|---|
| IN RE: <br> NATALIE A. PACILEO, <br> d/b/a ERIE COUNTY FARMS, | : BANKRUPTCY NO. 15-11315-TPA |
| Debtor | : CHAPTER NO. 13 |
| NATALIE A. PACILEO, <br> d/b/a ERIE COUNTY FARMS, | : Related to Document No. 8 |
| Movant <br> v. | |
| UNITED STATES OF AMERICA, <br> INTERNAL REVENUE SERVICE, <br> PENNSYLVANIA DEPARTMENT OF <br> LABOR AND INDUSTRY, and <br> RONDA J. WINNECOUR, ESQ., <br> CHAPTER 13 TRUSTEE, | |
| Respondents | |

**OBJECTION OF CONSUMER FRESH PRODUCE, INC. TO MOTION FOR
AUTHORIZATION TO USE CASH COLLATERAL [DOC. 8]**

COMES NOW, Consumer Fresh Produce, Inc. ("Consumer"), by its undersigned counsel, and files its objection (the "Objection") to the *Motion for Authorization to Use Cash Collateral* [Doc. 8] (the "Cash Collateral Motion"). In support of its Objection, Consumer respectfully states as follows.

**I.     BACKGROUND**

1.     Debtor filed her Chapter 13 Petition on December 14, 2015 (the "Petition Date").

2.     Prior the Petition Date, Consumer supplied Debtor with wholesale quantities of fruits and vegetables worth the principal amount of $159,524.26, plus interest and attorneys'

fees,[1] for which it has not been paid. *See* Consumer's PACA license information, statement of account, and unpaid invoices are attached as **Exhibits A,[2] B, and C**, respectively.

3. Consumer is a licensee under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.* ("PACA"), as amended, and preserved its rights as a beneficiary of the statutory trust created under the PACA, 7 U.S.C. § 499e(c)(2), by placing the language on its invoices as allowed by Section 499e(c)(4) of PACA. *See* **Exhibit C**.

4. Debtor is and was a PACA licensee and at all pertinent times herein was subject to the provisions of PACA. A copy of Debtor's PACA license information is attached as **Exhibit D**.

5. Debtor's Cash Collateral Motion was granted on an interim basis on December 18, 2015. *See Interim Order Authorizing Use of Cash Collateral* (the "Interim Order") [Doc. 20]. In relevant part, the Interim Order provides for monthly payments to be made to the Internal Revenue Service and the Pennsylvania Department of Labor and Industry. *Interim Order* ¶ 6.

6. Debtor agreed to extend Consumer's deadline to object to the use of cash collateral to January 5, 2016. *See Stipulation to Extend Deadline to Object to Cash Collateral For Consumer Fresh Produce, Inc.* [Doc. 30].

## II.  OBJECTIONS

7. Neither the Cash Collateral Motion nor the Interim Order address Consumer's rights to prompt payment as a beneficiary of the PACA trust; nor is there adequate protection given to Consumer for the diminution of its PACA trust assets while cash collateral, which is

---

[1] *See Middle Mountain Land and Produce, Inc. v. Sound Commodities, Inc.*, 307 F.3d 1220 (9th Cir. 2002); *Country Best v. Christopher Ranch, L.L.C.*, 361 F.3d 629 (11th Cir. 2004) (unpaid sellers of produce who include contractual provisions for attorneys' fees and interest in their agreements to sell perishable agricultural commodities, and who properly preserve PACA trust benefits, are entitled to trust protection for those additional expenses incurred).

[2] PACA license information is published by the USDA's Agricultural Marketing Service at http://apps.ams.usda.gov/pacasearch/default.aspx.

presumed to be a PACA trust asset, is being used to fund ongoing operations and pay purported tax creditors. Essentially, Debtor is using PACA trust assets to continue operations and provide adequate protection to the taxing authorities, but does not guarantee that there will be sufficient PACA trust funds available to pay Consumer. The PACA trust interests of Consumer must be preserved and protected by segregation of assets equal to the total amount of the prepetition PACA trust claim owed by Debtor to Consumer.

### III.  ARGUMENT

#### A.  The PACA Trust

8.  The statutory PACA trust requires a produce receiver to hold in trust as a fiduciary its produce-related assets, which includes the produce itself, products derived therefrom, as well as any receivables or proceeds from the sale thereof, until full payment is made to the seller. 7 U.S.C. § 499e(c)(2). *See generally Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197 (3d Cir. 1998); *Tom Lange Co. v. Kornblum & Co., (In re Kornblum & Co..)*, 81 F.3d 280 (2nd Cir. 1996); *Sanzone-Palmisano Co. v. M. Seaman Enters., Inc.*, 986 F.2d 1010 (6th Cir. 1993) (noting that assets and proceed from produce should be held in trust until payment in full). The establishment of the trust is an unequivocal declaration that produce-derived assets are distinct and must be used to pay produce suppliers.

##### 1. The Scope of the Trust

9.  Section 499e(c)(2) defines the *corpus* of the trust as all produce, including all inventories of food or other products derived from produce, and receivables or proceeds from the sale of produce or its products. 7 U.S.C. § 499e(c)(2). The commingling of trust assets does not defeat the trust. 7 C.F.R. § 46.46(b). In addition, under common law trust principles, the trust extends to any other assets, including real property, acquired from a commingled account. *Sanzone-*

*Palmisano Co.,* 986 F.2d at 1013; *In re Kornblum & Co., Inc.,* 81 F.3d at 286-287; *In re Atlantic Tropical Market Corp.,* 118 B.R. 139, 142-43 (Bankr. S.D. Fla. 1990). In the bankruptcy context, the Debtor has the very difficult burden of establishing which, if any, assets are *not* subject to the PACA trust. *See Sanzone-Palmisano,* 986 F.2d at 1014; *In re Atlantic Tropical Market,* 118 B.R. at 142; *In re Richmond Produce,* 112 B.R. 364, 368 (N.D. Cal. 1990) ("The unpaid sellers are not required to trace and the trust arises immediately upon delivery."). The Debtor must prove either: (1) no PACA trust existed when the interest was acquired; or (2) although a PACA trust existed at the time, the interest was not acquired with trust assets; or (3) although a PACA trust existed when the interest was acquired, and the interest was acquired with trust assets, all unpaid sellers of produce were paid in full prior to the transactions involving the unpaid PACA trust creditors herein. *In re Kornblum & Co., Inc.,* 81 F.3d at 287.

10. The *Sanzone-Palmisano* court characterized this burden as nearly impossible to carry once trust proceeds have been commingled with non-trust proceeds.

> "We hold that a purchaser, or PACA debtor, has the burden of showing that disputed assets were not acquired with proceeds from the sale of produce or produce-related assets. . . . [I]n the conventional case, where the produce was sold at a gross profit, the proceeds were commingled in a general fund, and the general fund was used to buy more inventory, the PACA debtor will be unable to meet its burden, and the produce supplier will prevail. We believe that this is the outcome that Congress intended."

*Sanzone-Palmisano,* 986 F.2d at 1014.

11. Thus, a PACA debtor does not meet its burden of showing that the trust is inapplicable to non-produce inventory, or other assets, merely by establishing that the other items are not produce, or that only a certain percentage of the PACA debtor's inventory consists of produce. *Sanzone-Palmisano Co.,* 986 F.2d at 1013; *In re Kornblum & Co., Inc.,* 81 F.3d at 286-87;

*In re Atlantic Tropical Market Corp.*, 118 B.R. at 142-43. Instead, all assets of a produce debtor are presumed to be impressed with the PACA trust. *In re Atlantic Tropical,* 118 B.R. at 142.

### *2. Full Payment Promptly Required*

12. Congress also specifically directed that the failure to maintain the trust and make *full payment promptly* to the trust beneficiary is unlawful. 7 U.S.C. § 499b(4). Agricultural merchants, dealers and brokers "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities[,]" and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed. 7 C.F.R. § 46.46(d)(1).

### *3. Secured Financing Arrangements Prohibited*

13. Furthermore, Congress stated that secured financing arrangements, in which produce proceeds are used as security and diverted from the suppliers to lenders, are against the public interest and a burden on commerce, and that the purpose of this law is to remove this burden on commerce. 7 U.S.C. § 499e(c)(1); *see Consumers Produce Co. v. Volante Wholesale Produce*, 16 F.3d 1374 (3d Cir. 1994); *E. Armata, Inc. v. Platinum Funding Corp.*, 887 F. Supp. 590 (S.D.N.Y. 1995); *A&J Produce Corp. v. CIT Group/Factoring, Inc.*, 829 F. Supp. 651 (S.D.N.Y. 1993). In fact, secured lenders may be required to disgorge trust funds they receive when the PACA trust has been breached. *Consumers Produce Co. v. Volante Wholesale Produce*, 16 F.3d 1374, 1379 (3d Cir. 1994); *Nickey Gregory Co. LLC v. Agricap, LLC,* 597 F.3d 591, 594 (4th Cir. 2010).

### *4. PACA Trust Assets Are Not Property of the Estate*

14. PACA trust assets are not part of the bankruptcy estate and must be set aside for distribution to trust beneficiaries. "If a buyer or receiver declares bankruptcy ..., trust assets are not to be considered part of the estate to be distributed to other creditors or sold unless all trust

beneficiaries have been paid." 49 Fed. Reg. at 45738. *See generally In re Long John Silver's Restaurants, Inc.*, 230 B.R. 29 (Bankr. D. Del. 1999); *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Bankr. C.D. Ill. 1997); *In re Southland & Keystone*, 132 B.R. 632 (9th Cir. BAP 1991); *In re Asinelli, Inc.*, 93 B.R. 433 (M.D.N.C. 1988); *In re Carolina Produce Distributors, Inc.*, 110 B.R. 207 (W.D.N.C. 1990); *In re Fresh Approach, Inc.*, 51 B.R. 412 (Bankr. 1985); *In re Milton Poulos, Inc.*, 94 B.R. 648 (Bankr. C.D. Cal. 1988). "That the corpus of a trust is not property of the estate is so widely accepted as to be beyond dispute." *In re Fresh Approach, Inc.*, 51 B.R. 412, 419 (Bankr. N.D. Tex. 1985); *see also* 11 U.S.C. § 541(d).[1]

15.     When a produce supplier is not paid, it is entitled to immediate relief in the form of segregation and payment of trust assets. *See also Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 156 (11th Cir. 1990); *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987); *In re Richmond Produce Co., Inc.*, 112 B.R. 364 (N.D. Cal. 1990); *J.R. Brooks & Son v. Norman's Country Market*, 98 B.R. 47, 50 (N.D. Fla. 1989); *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Bankr. C.D. Ill. 1997) (debtor required to immediately pay trust assets to the PACA trust creditors); *In re W.L. Bradley, Inc.*, 75 B.R. 505 (E.D. Pa. 1987) (automatic stay lifted and immediate payment of trust proceeds required to the PACA trust creditors); *In re Monterey House, Inc.*, 71 B.R. 244, 249 (S.D. Tex. 1986) (PACA defendant ordered to disburse unpaid amounts held in trust, and retain remainder in segregated, interest-bearing account to be used to pay PACA creditors' interest and attorneys' fees). In a case such as this, where Debtor has commingled the trust assets with non-trust assets, the trust extends to all of Debtor's inventory gained from a commingled account, *Sanzone-Palmisano Company*, 986 F.2d at 1013-14, and to

---

[1] 11 U.S.C. § 541(d) states in pertinent part: "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest,…becomes property of the estate…only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

any other assets acquired with PACA trust funds. *In re Kornblum & Co., Inc.*, 81 F.3d at 286; *In re Atlantic Tropical Market Corp.*, 118 B.R. at 142.

16. Because PACA trust assets are outside of the bankrupt's estate, PACA trust beneficiaries "take complete priority in payment as to all the assets of the debtor, *ahead of the claims of creditors who have valid security interests, ahead of the administrative costs and expenses incurred in [bankruptcy] court*, and ahead of all other priority and general creditors." *In re Super Spud, Inc.*, 77 B.R. 930, 932 (M.D. Fla. 1987) (emphasis added); *see In re Kennedy & Cohen, Inc.*, 612 F.2d 963, 965 (5th Cir. 1980); *see also In re Fresh Approach, Inc.*, 51 B.R. 412, 419 (N.D. Tex. 1985); *C.H. Robinson v. Alanco Corp.*, 239 F.3d 483 (2d Cir. 2001) (payment to other creditors, including to PACA debtor's counsel, prior to payment to PACA trust creditors is not permitted under PACA). The priority of trust creditors to PACA trust assets over all other creditors was acknowledged by the Internal Revenue Service in an August 28, 1989 memorandum, a copy of which is attached hereto as **Exhibit E**.[1]

### B. Objections to the Cash Collateral Motion

17. The relief requested by Debtor and granted in the Interim Order provides adequate protection to Debtor's purported tax creditors in the forms of payments and replacement liens, but provides no relief to Consumer. Such relief is improper because Consumer's interest as a PACA trust creditor has priority over the interests of the taxing authorities, which are subordinate to PACA trust creditors as a matter of law. Specifically, the Interim Order provides that Debtor will pay $866.91 per month to the Internal Revenue Service and $794.77 per month

---

[1] The Memorandum deals with the Packers and Stockyards Act trust upon which the PACA trust was modeled. *See, e.g., Morris Okun v. Zimmerman*, 814 F.Supp. 346, 349 (S.D.N.Y. 1993) (explaining that the PACA is based on the Packers and Stockyards Act).

to the Pennsylvania Department of Labor and Industry. However, Debtor's cash proceeds are indisputably within the scope of the PACA trust, and it is expressly contrary to PACA to allow such funds to be paid to non-PACA taxing authorities while PACA trust creditors are unpaid. 7 U.S.C. §499e(c)(1) and (2); *Sanzone-Palmisano Company*, 986 F.2d at 1012-13.

18. In essence, Debtor is requesting that she be permitted to keep dissipating trust assets through her continued operations and payments to purported tax creditors, with no provision made for payment of Consumer's prepetition PACA trust debt. This is precisely the kind of risk that Congress decreed produce suppliers would not have to assume by enacting the trust provision of PACA. It is contrary to federal law to reorganize using PACA trust assets. Such trust assets must be segregated and "freely available" to satisfy sellers of produce.

### III.  RELIEF REQUESTED

19. Debtor must be required to demonstrate how she will adequately protect Consumer's trust interests. *See* 11 U.S.C. §363(o). Consumer requests that Debtor be required to set aside sufficient monies to pay Consumer's PACA trust claim in a segregated account to replace the PACA trust assets Debtor has already dissipated and to ensure sufficient funds are available to pay Debtor's PACA trust creditors.[1] The propriety of this remedy is demonstrated by the Order issued by the United States Bankruptcy Court for the District of Delaware in the case of *In re Fleming Companies, Inc., et al*, Case No. 03-10945 (MFW), wherein the Court granted the same relief that PACA Creditors are seeking herein, and required the Debtors to set aside $26 million for the benefit of the Debtors' PACA Creditors which were granted a replacement lien in the final financing order. Similarly, the United States Bankruptcy Court for the Southern District

---

[1] Consumer is entitled to payment of the full amount due under the PACA trust, which is the principal amount its PACA claim, plus interest and attorneys' fees as "sums owing in connection" with the PACA trust debt. *See Coosemans Specialties, Inc. v. Garguilo*, 485 F.3d 701, 709 (2d Cir. 2007).

of New York granted the same relief and required the Debtors to set aside $30 million for the benefit of the Debtors' PACA Creditors in the case of *In re Winn Dixie Stores, Inc., et al.*, Case No. 05-11063-RDD (subsequently transferred to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division). The adequate protection requested in this case is considerably less, but just as vital to protect Consumer's rights under the PACA trust.

20. Anything less than an actual segregation and timely payment of PACA trust assets contravenes the statutory and case law on this issue, and frustrates Congress' intent that PACA beneficiaries and their trust rights remain free from the burdens and delays inherent in bankruptcy. Failure to do so will likely lead to Consumer being left with no PACA trust assets, no means of securing payment and no other adequate remedy.

### IV.    CONCLUSION

21. For the foregoing reasons, Consumer respectfully request that the Debtor be required to segregate sufficient funds to pay Consumer's PACA trust claim, and be directed to promptly pay this prepetition PACA trust debt.

Respectfully submitted this 5th day January, 2016.

        SAUL EWING LLP

        By: /s/ Charles Kelly
            Charles Kelly
            One PPG Place
            Suite 3010
            Pittsburgh, PA 15222
            (412) 209-2532
            Fax: (412) 209-2582
            PA Attorney I.D. No. 51942
            ckelly@saul.com

        and

SAUL EWING LLP
Eric L. Brossman
Penn National Insurance Plaza
2 North Second Street, 7th Floor
Harrisburg, PA 17101-1619
(717) 257-7570
Fax: (717) 237-7438
PA Attorney I.D. No. 27731
ebrossman@saul.com
*Pro Hac Vice Motion Pending*

and

MCCARRON & DIESS
Kate Ellis,
4530 Wisconsin Avenue, N.W., Suite 301
Washington, DC 20016
(202 364-0400
Fax: (202) 364-2731
*Pro Hac Vice Motion Pending*

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2016, a true and correct copy of the foregoing Objection[1] was caused to be served upon the following via the Court CM/ECF electronic filing system and/or U.S. first class mail, postage prepaid:

Ronda J. Winnecour
Suite 3250, USX Tower
600 Grant Street
Pittsburg, PA 15219

Office of the United States Trustee
Liberty Center
1001 Liberty A venue, Suite 970
Pittsburgh, PA 15222
PHIL1 5109352

---

[1] Exhibits are voluminous and are not being served via U.S. mail. They are available for review on the Court's CM/ECF system or on request to counsel.

- 10 -

Jennifer M. Irvin
Commonwealth of Pennsylvania
301 Fifth Avenue
Suite 230
Pittsburgh, PA 15222-3713

Michael P. Kruszewski
Quinn Law Firm
2222 West Grandview Boulevard
Erie, PA 16506

Jeffrey Kurtzman
Klehr Harrison Harvey Branzburg & Ellers
1835 Market Street
Suite 1400
Philadelphia, PA 19103

By: /s/ Charles Kelly
Charles Kelly